IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| BARBARA STANFIELD, <br><br> Plaintiff, <br> v. <br><br> THOMAS DART, in his individual capacity; COOK COUNTY, a unit of municipal government; COOK COUNTY SHERIFF'S DEPARTMENT, a political subdivision; THOMAS SNOOKS; SCOTT KURTOVICH, individually, <br><br> Defendants. | Case No. 10 C 6569 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Stanfield ("Stanfield") filed suit against Thomas Dart ("Dart"), Cook County ("County"), the Cook County Sheriff's Department ("CCSD"), Thomas Snooks ("Snooks"), and Scott Kurtovich ("Kurtovich") (together, "Defendants"). Stanfield, in her Amended Complaint, alleges in Count I that the CCSD sexually harassed her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII")[1]; in Count II that Defendants discriminated against her on the basis of her gender in violation of 42 U.S.C. § 1983 ("§ 1983"); in Count III that Snooks assaulted and battered her in violation of Illinois state law; in Count IV that Snooks intentionally inflicted emotional distress in violation of Illinois state law; in Count V that Dart, Kurtovich, and Snooks violated the Gender Violence Act, 740 ILCS 82/1 *et seq.* ("GVA"); in Count VI that the County and CCSD violated the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et seq.*

---

[1] Stanfield initially brought Count I against the County and the CCSD but stipulated in her Response (R. 28-1 at 4.) that Count I is only properly against the CCSD. Stanfield also stipulated to the dismissal of all *respondeat superior* claims against the County. (R. 28-1 at 3.)

("ICRA"); and in Count VII Stanfield alleges an indemnification claim against the County. Dart, the County, the CCSD, and Kurtovich move to dismiss Counts II, V, VI, and VII; Snooks moves to dismiss Counts II, III, IV, and V. For the following reasons, the Court grants in part and denies in part Defendants's Motions to Dismiss: the Court grants Dart and Kurtovich's Motion to Dismiss Counts II and V without prejudice; the Court denies Snooks's Motion to Dismiss in its entirety and denies the CCSD's Motion to Dismiss Counts II and VI and the County's Motion to Dismiss Counts VI and VII.

## STATEMENT OF FACTS

The following facts are taken from Stanfield's Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Stanfield has been employed as a correctional officer by the CCSD since July 21, 1991 and has worked in both the Records Department and the Kitchen Services Department. (Amd. Compl. ¶¶ 18, 19.) Snooks was hired by Dart and the CCSD and at all relevant times was Stanfield's direct supervisor. (*Id*. ¶¶ 21, 22.) Snooks had "unreviewed authority" to transfer female employees within the CCSD. (*Id*. ¶ 39.) Kurtovich was hired by Dart and the CCSD and at all relevant times was the direct supervisor of Snooks. (*Id*. ¶ 20.) Both Kurtovich and Snooks were hired based on their political and personal affiliations with Dart. (*Id*. ¶¶ 23, 24.)

Stanfield alleges that she was continuously subjected to offensive, unwelcome, physically and sexually abusive behavior. (*Id*. ¶ 27.) Specifically, in August 2009, Snooks "continually" asked Stanfield out on dates. (*Id*.) Snooks suggested that he was sexually interested in Stanfield; commented that he could make her job easier if she would agree to a sexual relationship with him;

made comments that he was looking for a girlfriend and that he wanted to have sex with her; asked her for her personal cell phone number; ordered her transferred to the Records Department; and grabbed her breast and asked what color her bra was.[2]  (*Id.*)  Between October 2009 and December 2009, Snooks demanded that Stanfield and other female employees come into his office and give him massages.  (*Id.*)

On one occasion, Snooks directed Stanfield to come into his office and sit on a sofa adjacent to his desk.[3]  (*Id.*)  Over Stanfield's objections, Snooks closed and locked his office door and ordered Stanfield to give him a leg massage.  (*Id.*)  Snooks then grabbed her by her neck and arm and forced her head towards his genitals; pulled out his penis; and attempted to force Stanfield to give him fellatio.  (*Id.*)  Stanfield struggled to get away and threatened to scream.  (*Id.*)  Snooks responded that he could make her life miserable; he then ejaculated on Stanfield.  (*Id.*)

Snooks bragged about his conduct to Dart and Kurtovich, who took no action against him.  (*Id.* ¶ 27, 43)  Though female employees are routinely harassed, the CCSD "scuttle[d]" investigations of complaints of sexual harassment.  (*Id.* ¶¶ 29, 33.)  The "code" of the CCSD "was that employees should not 'snitch' on one another."  (*Id.* ¶ 37.)

Stanfield complained to the Office of Professional Review ("OPR") within the CCSD about the generally hostile work environment and Snooks's behavior in particular, but the OPR did not take steps to remedy the situation.  (*Id.* ¶ 40.)  Stanfield reported Snooks's conduct to the Illinois Attorney General's office, but the matter was instead referred back to the CCSD.  (*Id.* ¶ 41.)  Stanfield applied for a leave of absence due to her emotional distress and "an inability to work."  (*Id.*

---

[2] The Amended Complaint does not provide dates for these incidents.

[3] The Amended Complaint does not provide a date for this incident.

¶ 49.)  Defendants initially denied her leave until she gave a statement to the CCSD regarding Snooks.[4]  (*Id*.)

Stanfield filed a complaint with the EEOC on June 14, 2010.  (*Id*. ¶ 6.)  Snooks retired at an unspecified date after Stanfield complained of sexual harassment.  (*Id*. ¶ 45.)  Stanfield received a "right to sue" letter from the U.S. Department of Justice, Civil Rights Division, on November 3, 2010.  (*Id*. ¶ 7.)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff.  *See Murphy*, 51 F.3d at 717.  To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief.  *Id.*  A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *See id.* at 1949.

---

[4] It is not clear from the Amended Complaint whether Stanfield made a statement or was granted leave. Stanfield also alleges that she requested a transfer to another position away from Snooks, but it is not clear whether a transfer was granted.  (Amd. Compl. ¶ 38.)

# DISCUSSION

## I. Count II

Dart, the CCSD, and Kurtovich move to dismiss Count II for failure to plead a § 1983 claim against them individually or pursuant to *Monell*; Dart and Kurtovich also claim qualified immunity. Snooks moves to Dismiss Count II for failure to allege specific dates and, subsequently, for failure to allege a constitutional violation.

### A. Snooks, Dart, and Kurtovich

Liability under § 1983 requires a defendant's direct, personal involvement in the alleged constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citation omitted). The doctrine of *respondeat superior* does not apply to actions filed under § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). For a supervisor, § 1983's personal involvement requirement is satisfied if the conduct causing the constitutional violation occurs at the supervisor's direction or with his knowledge and consent. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id.* (internal citation and quotations omitted).

As an initial matter, the Court finds that Stanfield has alleged sufficient facts to demonstrate a constitutional violation. *See Bohen v. City of E. Chi., Ind.*, 799 F.2d 1180, 1185 (7th Cir. 1986) (holding that sexual harassment directed solely at a plaintiff because she is a woman is actionable as a violation of the equal protection clause). While the Amended Complaint does not provide the date of the forced leg massage incident, it nonetheless states a claim of sexual harassment. As such, Snooks's defense—that Stanfield failed to plead the incidents relating to sexual harassment with sufficient detail or dates—is unavailing. Stanfield need not plead facts that address the affirmative defense of a statute of limitations and has not pled facts that bar her from seeking relief. *See Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005); *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Dart and Kurtovich argue that Stanfield's conclusory statements—that they had knowledge of Snooks's actions—are insufficient to maintain § 1983 liability against them in their individual capacities for their knowing inaction. The Court agrees. Stanfield asserts that Dart and Kurtovich knew about Snooks's behavior, yet she fails to plead any facts to support her conclusory allegations. *See Bohen*, 799 F.2d at 1187 (noting that a plaintiff may make a showing of sexual harassment attributable to the employer under § 1983 "by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination."); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (official that "knew of the actions of his subordinates which resulted in a constitutional violation" but "failed to take any preventative action" was considered "personally involved" for § 1983 purposes). Here, Stanfield has not alleged any specific dates on which Dart or Kurtovich were notified of Snooks's behavior, nor does she claim to have complained directly to either of them. Stanfield has not pled facts that Dart or Kurtovich were on notice or aware of Snooks's behavior and, as such, Dart and Kurtovich

6

cannot be held liable as supervisors.

The Court therefore finds that Stanfield has pled a § 1983 claim against Snooks but has failed to plead one against Dart and Kurtovich as supervisors.

**B.      Qualified Immunity**

Dart and Kurtovich argue that even if they were found liable under § 1983 as supervisors, they are nonetheless entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 471-72 (7th Cir. 1997) (internal citation and quotation omitted). Courts consider whether the alleged conduct sets out a constitutional violation and whether the constitutional standards were clearly established at the time of the violation. *See id.* at 472.

Here, Stanfield has alleged a constitutional violation. *See Bohen*, 799 F.2d at 1185. Stanfield, however, has failed to allege facts that demonstrate Dart or Kurtovich's awareness of Snooks's harassing behavior. Therefore, Stanfield cannot claim that the conduct of Dart and Kurtovich violated her clearly established constitutional rights. As such, even if the Court were to find Dart and Kurtovich liable under § 1983, the Court finds that Dart and Kurtovich are entitled to qualified immunity based on the facts plead in Stanfield's Amended Complaint.

**C.      Monell**

The CCSD cannot be held liable for § 1983 violations under the doctrine of *respondeat superior* "for an injury inflicted solely by its employees or agents." *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff in a § 1983 case, however, can sue the

7

individual government actors that allegedly caused the constitutional violation as well as the municipality connected to the violation. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 302-05 (7th Cir. 2010). A municipality may be liable for damages under § 1983 if the unconstitutional act is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Id.* at 303. A finding of liability against the individual defendants is not a prerequisite for establishing *Monell* liability against the municipality. *See id.* at 305.

Here, Stanfield alleges that the CCSD engaged in a policy, practice, and pattern of sexual harassment, failure to respond to complaints, and retaliation against those who complain about unlawful conduct. *See, e.g., Gilbert ex rel. James v. Ross*, 2010 WL 145789 at *3 (N.D. Ill. Jan. 11, 2010) (Dow, J.) (noting that plaintiff's allegations of ongoing practices satisfied *Monell* pleading requirements even though the plaintiff did not specifically reference multiple instances of wrongdoing). Stanfield has therefore alleged sufficient facts to state a claim under *Monell*. *See Lanigan*, 110 F.3d at 480 (finding allegations against a municipality that border on "boilerplate vagueness" were nonetheless sufficient to allege a *Monell* claim).

As such, the Court grants Dart and Kurtovich's Motion to Dismiss Count II without prejudice and denies Snooks and the CCSD's Motions to Dismiss Count II.

**II. Count III**

Battery is the unauthorized touching of another person, *Luss v. Vill. of Forest Park*, 878 N.E.2d 1193, 1206 (Ill. App. Ct. 2007), while assault is a reasonable apprehension of imminent battery, *Rosenberg v. Packerland Packing Co., Inc.*, 370 N.E.2d 1235, 1238 (Ill. App. Ct. 1977).

8

Here, Stanfield has alleged that Snooks touched her without authorization on at least two separate occasions and that she reasonably feared imminent touching on other occasions. Therefore, Stanfield has satisfied her burden and the Court denies Snooks's Motion to Dismiss Count III.

### III. Count IV

Under Illinois law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct of defendant; (2) that the defendant knew, or should have known, that the conduct would inflict severe emotional distress; and (3) that the defendant's conduct did cause extreme emotional distress. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79-80 (Ill. 2003). Here, Stanfield alleges that Snooks committed extreme and outrageous conduct, as evidenced, for example, by the leg massage incident; that Snooks knew his conduct would inflict severe distress; and that Stanfield was affected physically and emotionally from Snooks's harassment. Specifically, Stanfield alleges that she applied for leave due to her emotional distress and her subsequent "inability to work." As discussed above, Snooks's claim that Stanfield's failure to plead the date of the leg massage incident bars her claim is unavailing. Therefore, the Court denies Snooks's Motion to Dismiss Count IV.

### IV. Count V

Stanfield alleges that Snooks, Dart, and Kurtovich violated the GVA. The GVA provides victims of "gender-related violence," defined to include acts of sexual assault or battery, with "a private right of action against those who personally committed the acts of gender-related violence and against those who encouraged or assisted the acts of gender-related violence." *Doe v. Univ. of Chi.*, 939 N.E.2d 76, 78 (Ill. App. Ct. 2010). "Gender-related violence includes acts satisfying the elements of battery committed at least in part on the basis of a person's sex and physical intrusions

9

or invasions of a sexual nature under coercive conditions that satisfy the elements of battery." *See, e.g., Cruz v. Primary Staffing, Inc.*, 2011 WL 1042629 at *1 (N.D. Ill. Mar. 22, 2011) (Lefkow, J.).

Here, Stanfield's allegations meet the elements of sexual assault and battery under Illinois law. As such, they provide grounds for a cause of action under the GVA against Snooks, which establishes legal duties separate from those created by the Illinois Human Rights Act ("IHRA"). *See, e.g., Vince v. Ill. Cent. Sch. Bus, LLC*, 2011 WL 578832 at *17 (N.D. Ill. Feb. 9, 2011) (Leinenweber, J.) (finding that claim under the GVA was not preempted by the IHRA). Stanfield, however, is unable to demonstrate, based on the facts pled in her Amended Complaint, that Dart or Kurtovich were aware of Stanfield's complaints or of Snooks's harassing behavior. As such, Stanfield cannot maintain a claim against Dart or Kurtovich because there are no facts demonstrating that they encouraged or assisted the alleged acts of gender-related violence. *See Doe*, 939 N.E.2d at 78.

Therefore, the Court grants Dart and Kurtovich's Motion to Dismiss Count V without prejudice and denies Snooks's Motion to Dismiss Count V.

## V. Count VI

Stanfield alleges that the County and the CCSD violated the ICRA, which provides that no unit of state, county, or local government in Illinois shall: (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender. 740 ILCS 23/5. ICRA allows for plaintiffs to bring a civil lawsuit in federal district court as a supplemental claim to a federal claim. *Id*. "The statute

does not reference intent of the allegedly discriminatory party." *See, e.g., Mcfadden v. Bd. of Educ. for Ill. School Dist. U-46*, 2006 WL 6284486 at *8 (N.D. Ill. Oct. 3, 2006) (Gettleman, J.) (finding plaintiffs's allegation that they were members of a protected class and discriminated against based on their race and national origin sufficient to survive motion to dismiss).

Here, Stanfield alleges that the CCSD engaged in unlawful employment practices that had the "likely" effect of "discriminating against, depriving and tending to deprive equal employment to" Stanfield due to her gender. (R. 28-1 at 11.) Stanfield also alleges that the CCSD engaged in a pattern of failing to respond to employee complaints about sexual harassment. Stanfield therefore states a claim under the ICRA and the Court denies the County and CCSD's Motions to Dismiss Count VI.

## VI. Count VII

The County challenges its inclusion in Count VII, which alleges an indemnification claim against it. While a county is required to pay for a judgment entered against the county sheriff in his official capacity, *Carver v. Sheriff of LaSalle County, Ill.*, 324 F.3d 947, 947-48 (7th Cir. 2003), here Stanfield brings suit against Snooks, Dart, and Kurtovich in their individual capacities as well as claims against the CCSD as a political subdivision. Nonetheless, "the majority of courts that have considered the issue have determined that there is no reason why a plaintiff should not be permitted to proceed with an indemnification claim under [745 ILCS] 10/9-102 before [her] actions against municipal employees are final." *Griffin v. Meagher*, 2009 WL 5174684 (N.D. Ill. Dec. 21, 2009) (Dow, J.) (collecting cases). As such, the Court denies Defendants's Motion to Dismiss Count VII.

**CONCLUSION AND ORDER**

The Court grants in part and denies in part the Defendants's Motions to Dismiss Stanfield's Amended Complaint: the Court grants Dart and Kurtovich's Motion to Dismiss Counts II and V without prejudice; the Court denies Snooks's Motion to Dismiss in its entirety; denies the CCSD's Motion to Dismiss Counts II and VI; and denies the County's Motion to Dismiss Counts VI and VII.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 14, 2011