IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA STANFIELD,<br>    Plaintiff,<br> v.<br><br>THOMAS DART, in his individual capacity;<br>COOK COUNTY, a unit of municipal<br>government; COOK COUNTY SHERIFF'S<br>DEPARTMENT, a political subdivision;<br>THOMAS SNOOKS, SCOTT KURTOVICH,<br>individually,<br><br>    Defendants. | Case No. 10 C 06569<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Stanfield ("Stanfield") filed suit alleging that she was continuously subjected to offensive, unwelcome, physically and sexually abusive behavior while employed as a correctional officer at the Cook County Sheriff's Department ("CCSD"), specifically under the supervision of Defendant Thomas Snooks ("Snooks"). She alleges sexually harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"); discrimination on the basis of her gender in violation of 42 U.S.C. § 1983 ("§ 1983"); assault and battery and intentional infliction of emotional distress in violation of Illinois state law; violation of the Gender Violence Act, 740 ILCS 82/1 et seq. ("GVA"); violation of the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 et seq. ("ICRA"), and also

alleges an indemnification claim against the County. *Stanfield v. Dart*, 2011 U.S. Dist. LEXIS 40668 (N.D. Ill. Apr. 14, 2011).

Stanfield seeks to depose Snooks's wife, asking that she testify as to Snooks's general health and sexual abilities, medications and medical treatment; her conversations with Snooks regarding his activities with the Cook County Sheriff's Department; Snooks's employment, assets and financial condition. Before the Court is Snooks's Motion to Quash the Subpoena and Motion for a Protective Order to prohibit such a deposition. Snooks invokes Fed. R. Civ. P. 45(c)(3) and 26 to support that Snooks's wife's testimony is subject to marital privilege under both federal and state law, and that the information sought can be otherwise gleaned in whole or in part from other witnesses who have been identified by the parties.

A court must quash or modify a subpoena that, in relevant part, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3). Federal common law—"as interpreted by United States courts in the light of reason and experience"—governs a claim of privilege. Fed. Rules Evid. R. 501. As a preliminary matter, because Cook County has reserved the right to refuse or oppose indemnification for any judgment against Snooks, his financial status is now a matter for discovery by Stanfield. For the following reasons, the Court finds that Snooks's sexual abilities as perceived by his wife are communicative

2

acts and that his wife has not waived her marital communications privilege. The Court grants in part and denies in part Snooks's motion to quash the subpoena: granted as to Snooks's sexual abilities, medical treatment, and conversations regarding his activities with the Cook County Sheriff's Department; denied as to his general health and medications, as well as his employment, assets and financial condition. The Court grants Snooks's motion for a protective order accordingly.

**I. The Federal Marital Communications Privilege**

Communications between a husband and wife are presumptively confidential. *Blau v. United States*, 340 U.S. 332, 333, 95 L. Ed. 306, 71 S. Ct. 301 (1951). Two privileges exist under federal common law that prevent these communications from being introduced as evidence, and thereby preserve their confidentiality: the marital testimonial privilege and the marital communications privilege. *United States v. Darif*, 446 F.3d 701 (7th Cir. 2006); *see also Benson v. United States*, 146 U.S. 325, 337 (1892) (describing the importance of seeking witness testimony "unless some one of those peculiarly confidential relations, like that of husband and wife, forbids the breaking of silence."). The marital communications privilege may be raised by either the defendant-spouse or the witness-spouse to preclude the witness-spouse's testimony about their communications to "ensure that spouses generally . . . feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *United States v. Guy Westmoreland*, 312 F.3d 302, 306 (7th Cir.

2002). The marital testimonial privilege may be invoked by the witness-spouse to preclude the witness-spouse's testimony about any topic to "protect against the impact of the testimony on the marriage." *Id.* at 306. Because the marital testimonial privilege has historically been available to a witness-spouse only in a federal criminal proceeding, and not in a civil proceeding such as the present civil rights claim, Snooks's motion will be treated as an invocation of only the marital communications privilege. *Ryan v. Commissioner*, 568 F.2d 531, 544 (7th Cir. 1977), cert. denied, 439 U.S. 820 (1978) (declining to decide whether the privilege might ever be available in a civil case, and concluding that the privilege would at most be available in civil cases only where "a spouse who is neither a victim nor a participant observes evidence of the other spouse's crime"); *see also* Katherine O. Eldred, *"Every Spouse's Evidence": Availability of the Adverse Spousal Testimonial Privilege in Federal Civil Trials*, 69 U. Chi. L. Rev. 1319, 1326 (2002) ("District courts in the . . . Seventh Circuit[] deny the [marital testimonial] privilege in federal civil cases altogether.").[1]

The marital communications privilege covers all confidential communications made

---

[1] The Court finds little guidance whether to extend the marital testimonial privilege to the present civil case. *See* Bender's Federal Evidence 1-501 § 501.6 (2010) ("The privilege against adverse spousal testimony is well settled in criminal cases . . . but its possible role in federal civil litigation is unclear. The proposed version of Rule 505, which was approved by the Supreme Court but never adopted by Congress, would have restricted its availability to criminal cases. It has been widely assumed and often asserted, at least in dictum, that the privilege is limited to criminal cases and may never be asserted in a civil proceeding, although the most recent appellate federal cases to discuss the issue have all taken care to avoid squarely ruling on that question. Although those courts have indicated a willingness to consider the possible extension of that privilege to a spouse called to testify in a civil proceeding, at least in an appropriate case, no court has yet been willing to go that far, and the prospect remains uncertain at best.")

during a valid marriage with three exceptions: 1) communications not made in absolute confidence; 2) statements made as part of a joint criminal enterprise; and 3) descriptions of observations. *United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993); *see also United States v. Gray*, 2010 U.S. Dist. LEXIS 29467, 11-12 (N.D. Ind. Mar. 26, 2010). Stanfield presents no evidence that the Snooks' marriage of twenty years is somehow invalid or that his wife had a role in the alleged acts of sexual harassment. Rather, Stanfield argues that Snooks's sexual relations with his wife do not constitute communications—that his wife's knowledge of his general health and sexual abilities can be categorized as mere observations and therefore fall outside of the privilege.

In admitting a defendant's ex-wife's testimony about his car theft conspiracy and her observations of his forging car titles, the Seventh Circuit found that a district court did not err because the marital communications privilege did not cover her observations during the marriage, and did not apply to his statements made in the presence of a third party or as part of her limited co-conspirator role. *United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993). The Seventh Circuit reasoned that "[b]ecause testimony about first-hand observations would not affect the decision to confide in one's spouse, the privilege does not extend to descriptions of observations." *Short*, 4 F.3d at 478. Such reasoning would appear to be line with *Pereira v. United States*, 347 U.S. 1, 6, 74 S. Ct. 358 (1954), in which the Supreme Court observed that the marital communications privilege "generally, extends

5

only to utterances, and not to acts." Pursuing this line of reasoning, Stanfield narrows the privilege to cover speech, or at most nonverbal conduct that is clearly a substitute for oral communications.

However, some federal district courts have recognized that some acts are communicative and consequently are privileged. *See United States v. Buhe*, 128 F.3d 1440, 1444 (10th Cir. 1997) (listing federal district court decisions and concluding that the majority rule among federal courts holds that acts intended to convey a confidential message are privileged); *see also State v. Pelletier*, 149 N.H. 243, 247 (N.H. 2003) (holding as privileged any conversation or act performed by a spouse "attributable to the husband-wife relation, i.e., that which might not be spoken or done openly in public as tending to expose personal feelings and relationships or tending to bring embarrassment or discomfiture to the participants if done outside the privacy of the marital relation"). In denying a district court's admission of a defendant's wife testimony as to whether she had observed him perform certain sexual acts, the Tenth Circuit stated:

> We believe the accepted norm in this country is that intimate sex acts between marriage partners are communication and an important expression of love. [ . . . ] If we limit the marital communications privilege as narrowly as the government seeks in the instant case, a spouse could testify to every aspect of the marital sexual relationship. There is something inherently offensive in that idea.

*Buhe*, 128 F.3d at 1444-1445 (declining to decide whether testimony about physical acts

involving sex between marriage partners are within the marital communications privilege and instead finding an exception for child abuse to permit wife's testimony). In the present case, Stanfield similarly narrows the privilege but also frames the discovery question posed to Snooks's wife as simply whether Snooks is able to perform a sex act. Yet such an interpretation would vitiate the marital communications privilege. Compelling Snooks's wife to answer questions about her husband's sexual abilities contradicts the Seventh Circuit's explanation that the privilege exists to "ensure that spouses generally . . . feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *Westmoreland*, 312 F.3d at 306. The Court finds that such intimate knowledge is not mere observations by a wife of her husband's conduct, but instead non-verbal communicative acts that merit the protection of the marital communications privilege.

**II. The State Marital Privilege**

Turning to the related state claims of intentional infliction of emotion distress, as well as violation of the Gender Violence Act, those are governed by Illinois statute § 735 ILCS 5/8-801. *See* Fed. Rules Evid. R. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). In Illinois, either spouse may testify for or against the other so long as neither testifies as to "any communication or admissions made" by either to the other, with a few exceptions that are

inapplicable in the present case. *People v. Muzard*, 210 Ill. App. 3d 200, 212 (1st Dist. 1991). Stanfield cites Illinois cases in which a defendant's wife testified as to his criminal acts, which reasoned that "mere description by one spouse of general noncommunicative conduct is not protected by the marital privilege." *People v. Krankel*, 105 Ill.App.3d 988, 991, 61 Ill.Dec. 565, 434 N.E.2d 1162, 1164 (1982). However, the Court's finding that a wife's knowledge of her husband's sexual abilities is premised on precisely the communicative nature of those acts. *Cf. People v. Rettig*, 88 Ill. App. 3d 888, 891 (Ill. App. Ct. 1980) (finding no marital privilege violation when a wife testified as to what was written on a package that her defendant-husband stole because she was providing a description, not relaying a communication between herself and her husband). This reasoning is in line with the Illinois Supreme Court precedent: "[w]hether the divorced wife's knowledge of her husband's [sexual] conduct in the respect here referred to came to her as the result of his admissions to her or of her conversations with him, or as the result merely of her own observation, it was acquired in the confidence of the marriage relation, and, therefore, her evidence in regard to it should have been excluded upon principles of public policy." *Griffeth v. Griffeth*, 162 Ill. 368, 373-374 (Ill. 1896). Therefore, the Court does not hesitate to categorize the information sought by Stanfield as privileged under Illinois law.

**III. Waiver of the Marital Communications Privilege**

In the alternative, Stanfield argues in her supplemental response that Snooks waived

8

his marital communications privilege when he asserted at deposition that he could not have performed the alleged sex act as described by Stanfield. A waiver requires an intentional disclosure of the content of the confidential communication by the party seeking to invoke the privilege. See 2 Stone and Taylor, Testimonial Privileges § 5.12 at 5-28 to 5-30 (2d ed. 1993). One spouse may waive the ability to assert the marital communications privilege on his or her own behalf, but the privilege is held by both spouses, and thus its waiver by one spouse (by testimony or failure to assert the privilege) does not constitute a waiver of the privilege on behalf of the other spouse. *Andrews v. Holloway*, 256 F.R.D. 136, 147 (D.N.J. 2009) (citing federal common law from several circuits). That Stanfield claims that Snooks waived the privilege does not surmount the prohibition raised by Snooks's wife: she has indicated that she does not want to testify at any deposition for this case and that she does not want to waive her marital privilege. Snooks's counsel offers that she is prepared to present an affidavit to that effect. Regardless of Snooks's alleged waiver or potential desire to waive his privilege as part of his defense to the allegations, Snooks's wife has the right to assert the privilege regardless of the evidentiary limitation this may pose. *Darif*, 446 F.3d at 705; *see United States v. Lea*, 249 F.3d 632, 641 (7th Cir. 2001) ( the accepted cost of the marital communications privilege is "a reduction in truthful disclosure"). The privilege prohibits her compelled disclosure. *See* Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, 2 Federal Rules of Evidence Manual (9th ed.) P 501.02[8], at p. 501-75 (2006).

9

That Snooks may have in his lifetime performed the same physical act on a third party does not remove the cloak of confidentiality afforded to his communicative acts with his wife throughout the decades of their marriage. *See Pelletier*, 149 N.H. at 247 (holding as privileged any conversation or act performed by a spouse "attributable to the husband-wife relation, i.e., that which might not be spoken or done openly in public as tending to expose personal feelings and relationships or tending to bring embarrassment or discomfiture to the participants if done outside the privacy of the marital relation"). The marital communications privilege does not prevent Stanfield from seeking discovery on Snooks's sexual abilities, medications and medical treatment from Snooks himself and his medical providers, thereby reducing any prejudicial effect that Stanfield may attribute to the privilege's reduction in truthful disclosure.

10

The Court grants Snooks's motion to quash the subpoena with respect to Snooks's sexual abilities, medical treatment and conversations regarding his activities with the Cook County Sheriff's Department, conditioned on Snooks's production of an affidavit from his wife attesting that she is invoking her marital communications privilege. The Court denies the motion with respect to Snooks's general health, medications, employment, assets and financial condition. Snooks's motion for a protective order is granted accordingly.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 3, 2011