IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA STANFIELD ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | No. 10 C 6569 |
| THOMAS DART, in his individual capacity, ) | |
| COOK COUNTY, a unit of municipal ) | Judge Virginia M. Kendall |
| government; COOK COUNTY SHERIFF'S ) | |
| DEPARTMENT, a political subdivision; ) | |
| THOMAS SNOOKS, SCOTT KURTOVICH, ) | |
| individually ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Stanfield ("Stanfield") filed a six-count complaint against the Defendants for various claims premised on allegations of sexual harassment. Defendants Thomas Dart, Scott Kurtovich, Cook County and the Cook County Sheriff's Department have all moved for summary judgment on the claims asserted against them. For the reasons set forth below, the Defendants' Motion is granted in part and denied in part.

## STATEMENT OF FACTS[1]

The Cook County Sheriff's Office has employed Stanfield as a Correctional Officer since July 1991. (Def. 56.1 ¶ 2.) During the relevant period, Stanfield was assigned to the Central Kitchen and Records Departments. (*Id.* at ¶¶ 6-7, 20.) Snooks was the superintendent of those

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to the Defendant's Statement of Uncontested Facts have been abbreviated to "Def. 56.1 ¶ or Ex. __, p. __."; citations to Stanfield's Response to the Defendants' L.R. 56.1 Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."; and citations to Stanfield's Statement of Additional Facts have been abbreviated as "Pl. Add. 56.1 ¶ or Ex. ___, p. ___."

departments and was Stanfield's supervisor. (*Id.* at ¶ 5; Pl. Add. 56.1 ¶ 13.) Dart is the Cook County Sheriff. Kurtovich was the first assistant executive director of the Department of Corrections.

Stanfield started in Central Kitchen on October 4, 2009. (Def. 56.1 ¶ 6.) She was then transferred to the Records unit on or around October 15, 2009. (*Id.* at ¶ 7.) The next day, Snooks called Stanfield into his office. (*Id.* at ¶ 8.) He told her that he was stressed and needed a massage. (*Id.*) Stanfield obliged and massaged Snooks's shoulders for approximately five minutes. (*Id.*) Five days later, Snooks called Stanfield into his office again. (*Id.* at ¶ 10.) When she arrived, Snooks told her to lock the door. (*Id.* at ¶ 11.) She refused, so he locked the door and then pulled her onto the couch. (*Id.* at ¶ 11-13.) At this point, he asked her to perform oral sex on him. (*Id.* at ¶ 14.) She refused; however, he was undeterred. He pulled his penis out of his pants, grabbed Stanfield by the back the neck, and tried to pull her head towards his groin. (*Id.* at ¶ 15-16.) In the process, Snooks ejaculated in Stanfield's face. (*Id.* at ¶ 16.) Stanfield did not immediately report Snooks's actions. Over the next month, Snooks called Stanfield into his office twice more to request massages. (*Id.* at ¶ 9.) Stanfield acquiesced to these requests. Snooks's demands for massages were witnessed by Lt. Luna, a supervisor in the Records Department. (Pl. Add. 56.1 ¶¶ 6, 18.) Lt. Luna never reported Snooks's conduct or stopped it from occurring. (*Id.* at ¶ 18.)

In December 2009, Stanfield was transferred back to Central Kitchen from Records. (Def. 56.1 ¶ 22.) The next day, Snooks was transferred to Division 11. (*Id.*) Snooks was no longer Stanfield's supervisor. The record is silent as to whether they had any additional contact. Stanfield

never reported Snooks's actions to anyone until she informed Charles Holman about it.[2] (*Id.* at ¶¶ 51-52; Pl. Add. 56.1 ¶ 39.) Mr. Holman is a coordinator who provides sexual harassment training at the Sheriffs Academy. (Def. 56.1 ¶ 51.) Stanfield told Holman that she had been sexually assaulted by a high ranking official. (*Id.* at ¶ 52.) Holman advised Stanfield to follow the sexual harassment policy that is described in Sheriff's General Order 3.7A. (*Id.* at ¶ 53.) Holman also stated that the Sheriff's Department's historical practice was to punish those who submitted sexual harassment complaints. (Pl. Add. 56.1 ¶ 40.)

General Order 3.7A specifies the procedures for filing claims for sexual harassment with the Sheriff's Department. The policy states that an "employee who believes he or she has been sexually harassed may make a claim within 365 days following the alleged incident." (*Id.* at ¶ 25.) In making their claim, the policy directs employees to use the following procedures:

> When possible, the victim will directly inform the harasser that the conduct is unwelcome and must stop. It is important the victim communicate that the conduct is unwelcome, particularly when the alleged harasser may have some reason to believe that the advance may be welcomed.
>
> The employee shall fill out a Sexual Harassment Complaint Form and report the incident to his or her supervisor. If the employee's supervisor is the alleged harasser, the employee will notify the next in command. The employee will sign and date the Sexual Harassment Complaint Form. The employee can also report the incident directly to the Department Head, using the Sexual Harassment Complaint Form.
>
> The supervisor or next in command or Department Head will initiate a written, documented inquiry of the allegations and refer the complaint to the Inspector General's Office through the appropriate departmental Internal Affairs Division.

(Pl. Ex. 1.) The policy also provides that "a person who has witnessed or has knowledge of an incident of sexual harassment is also encouraged to follow this reporting procedure." (*Id.*) With

---

[2]The parties agree that Stanfield spoke to Holman about the incident but disagree as to the timing and scope of the conversation. The Defendants state that Stanfield never told Holman that Snooks was the specific individual who assaulted her. Stanfield contends that she did.

respect to supervisors, the policy provides that "[a]ny supervisor who is aware of or reasonably should be aware of sexually harassing conduct by another employee whether or not anyone complains about such harassment, but fails to report that conduct as required by this policy, may be subject to discipline." (*Id.*; Pl. Add. 56.1 ¶ 17.) The Sheriff's Office provides officers with training on this policy. (Def. 56.1 ¶ 49.) Stanfield received this training annually. (*Id.* at ¶ 50.)

Approximately eight months after Snooks's harassment began, Stanfield filed a written complaint of sexual harassment with the Sheriff's Office on June 22, 2010. (*Id.* at ¶ 27-28.) Stanfield does not recall who she gave the written complaint to. (*Id.* at ¶ 33.) However, she did not send the written complaint to either Sheriff Dart or Kurtovich directly. (*Id.* at ¶ 31-32.) Prior to filing the complaint, Stanfield never informed Dart nor Kurtovich about Snooks's conduct. (*Id.* at ¶ 30, 36.) Peter Kramer, General Counsel for the Sheriff's Office, received the complaint on June 24, 2010. (*Id.* at ¶ 59.) The next day, Kramer sent the complaint to Joe Ways, the Director of the Office of Professional Review. (*Id.* at ¶ 60.) That same day, Ways assigned the complaint to Detective Pon to investigate. (*Id.* at ¶ 57.) Detective Pon opened the investigation immediately after receiving the complaint. (*Id.* at ¶ 58.) Snooks retired from the Sheriff's Office on June 30, 2010, eight days after the complaint was filed. (*Id.* at ¶ 29.)

**STANDARD OF REVIEW**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v.*

*Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). The non-moving party, therefore, cannot rely on mere conclusions and allegations to create factual issues. *Bladerston v. Fairbanks Morse Engine Div. Of Coltec Ind.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)).

**DISCUSSION**

**I.      Section 1983 Claim Against Dart and Kurtovich**

Count II of Stanfield's Complaint advances a Section 1983 claim against Dart and Kurtovich in their individual capacities. Because the doctrine of *respondeat superior* does not apply in Section 1983 cases, Dart and Kurtovich can only be held personally liable for Snooks's conduct if they were personally involved in the alleged deprivation of Stanfield's constitutional rights. *See Johnson v.*

*Snyder,* 444 F.3d 579, 583 (7th Cir. 2006); *Gossmeyer v. McDonald,* 128 F.3d 481, 495 (7th Cir. 1997).[3] A defendant is personally responsible if he or she is aware of the harassing conduct and either facilitates it, approves it, condones it, or turns a blind eye. *Johnson,* 444 F.3d at 583. In this case, there is no evidence that either Dart or Kurtovich was aware of Snooks's conduct. Accordingly, judgment will be entered in their favor on this count.

Stanfield contends that Dart was aware of Snooks's conduct because: (1) she sent the sexual harassment complaint to Dart, personally; (2) even if Stanfield did not send him the complaint, knowledge of the complaint should be imputed to Dart; (3) Dart was aware that Snooks had the authority to meet with subordinates in his private basement office; and (4) that after sexually assaulting Stanfield, Snooks told her that "he was going to meet with [Dart] and 'let [Dart] know what a good time he was having.'" (Doc. 166 at 5.) However, none of these "facts" creates a genuine issue as to whether Dart facilitated, approved, condoned or turned a blind eye to Snooks's behavior.

As an initial matter, the Court may disregard the "facts" Stanfield cites regarding Dart's purported knowledge of the sexual harassment complaint form. The only support that Stanfield provides for her "fact" that Dart personally received her complaint form is the conclusory affidavit she attached to her statement of additional facts. However, the statements in this affidavit are contradicted by Stanfield's own deposition testimony. At her deposition, Stanfield testified she could not recall whether she I really chewed tgave the complaint to Dart. (Pl. Ex. 4 at 220.) The affidavit provides no explanation for Stanfield's subsequent recollection. Thus, this fact may be disregarded. *See Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532-33 (7th Cir. 1999) ("When

---

[3]For purposes of this motion, the Defendants concede the truth of Stanfield's allegations regarding Snooks's conduct.

a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy.") (internal cihatations and quotations omitted).

Similarly, there is no basis to impute knowledge of the complaint to Dart. There is no dispute that Peter Kramer, the Sheriff's Department's General Counsel, became aware of Stanfield's complaint after it was filed.[4] Thus, knowledge of the complaint should be imputed to the Sheriff's Office. *See United States v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes, Oneida County, Wis.,* 965 F.2d 311, 316 (7th Cir. 1992). However, contrary to Stanfield's assertion, this knowledge is not automatically imputed to every other officer in the Sheriff's Department, including Sheriff Dart. *See, e.g., Grove Holding Corp. v. First Wisconsin National Bank,* 12 F. Supp. 2d 885, 895 (E.D. Wis. 1998) ("The better rule seems to be knowledge acquired by the corporation should not be imputed to another officer or director as an individual unless there is first an examination of the duties of the directors or officers and the diligence displayed in performing their duties.") (internal quotations and citations omitted). Accordingly, the Court may disregard this fact as well.

Even if the Court considered these facts, they do not support Stanfield's position because they do not demonstrate that Dart facilitated or condoned Snooks's harassment of Stanfield. In fact,

---

[4]In her response brief, Stanfield moved the Court to strike Mr. Kramer's affidavit on the basis that Mr. Kramer was never identified in the Defendant's Rule 26(a)(1) disclosures. However, Stanfield failed to provide the Court with a copy of the Defendant's disclosures so there is no basis for the Court to assess the accuracy of Stanfield's motion. Even if Mr. Kramer were not disclosed, the Court would not strike the affidavit because: (1) the failure to disclose the information contained in his affidavit is harmless; and (2) Stanfield relies on this evidence in opposing the motion for summary judgment. *See* Fed. R. Civ. P. 37(c)(1); *United States v. Silvers,* 374 F.2d 828, 832 (7th Cir. 1967) (Defendant cannot request to exclude evidence after using it).

they support the opposite conclusion. As soon as Dart received the sexual complaint form, the Sheriff's Department opened an investigation into Snooks's conduct. Snooks retired a week later. Contrary to facilitating Snooks's conduct, the facts show that upon receiving the complaint, Dart, and the Sheriff's Department, took immediate steps to investigate the incident. Moreover, there is no allegation that Snooks harassed Stanfield in the period between when the complaint was filed and the time Snooks retired.

Stanfield's other "facts" also fail to create a genuine issue as to whether Dart was personally responsible for Snooks's conduct. First, to infer that Dart knew Snooks sexually harassed Stanfield because Dart knew Snooks met with subordinates in his office is patently unreasonable. Such an inference is unreasonable because it would be unusual, if not bizarre, for a supervisor not to meet with subordinates in their office. Snooks's alleged statement to Stanfield also fails to raise a genuine issue of material fact because there is no evidence that Snooks ever actually made this statement to Dart. Even if he did, the stray remark that Snooks was "having a good time" with Stanfield is too innocuous to infer that Dart knew Snooks was sexually harassing Stanfield. *Cf Shaw v. AutoZone, Inc.,* 180 F.3d 806, 813 n.3 (7th Cir. 1999) (a comment by alleged harasser that plaintiff was part of his "harem" was "too innocuous to cause a reasonable person to believe that [the defendant] was sexually harassing [the plaintiff] such that some sort of corporate response was necessary"). Accordingly, the Court finds that Stanfield has not raised a genuine issue of material fact as to Dart's knowledge of Snooks's conduct so as to avoid the entry of summary judgment on this count.

Similarly, Stanfield has not raised a genuine issue of material fact as to Kurtovich's knowledge. Stanfield argues that Kurtovich facilitated by Snooks by identifying the same insufficient facts she raised with respect to Sheriff Dart. In addition, she argues that Kurtovich

8

turned a blind eye to Snooks's conduct because: (1) he was aware that Snooks reassigned five African-American women to the Records Department; and (2) that Kurtovich went to the Records Department once and asked what the five women were doing there. (Doc. 166 at 5.) Without any other evidence, it would be unreasonable for the Court to infer that Kurtovich knew Snooks was harassing Stanfield merely because five women had been assigned to the Records Department. Accordingly, the Court finds that Stanfield has not raised a genuine issue of material fact as to Kurtovich's knowledge of Snooks's conduct so as to avoid the entry of summary judgment on this count.

## II.     Illinois Gender Violence Act Claim Against Dart and Kurtovich

Count V of Stanfield's Complaint advances a claim against Dart and Kurtovich, in their individual capacities, for a violation of the Illinois Gender Violence Act. Section 10 of the Act provides that:

> Any person who has been subjected to gender-related violence as defined in section 5 [750 ILCS 82/5] may bring a civil action for damages, injunctive relief or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 ILCS 82/10. There is no allegation that either Dart or Kurtovich personally committed any gender-related violence against Stanfield. Instead, Stanfield contends they personally encouraged Snooks's acts of gender-related violence. While no Illinois court has interpreted the bounds of the "encouraging or assisting" provision of the Act, the parties agree that a party must have knowingly and substantially assisted the principal violation.[5] (*E.g.,* Stanfield Resp., Doc. 166 at 5 ["the

---

[5]In *Doe v. PSI Upsilon,* an Illinois appellate court held that a plaintiff failed to adequately allege that the national chapter of a fraternity could be liable under the "encouraging or assisting" provision of the Act. 963 N.E.2d 327 (1st Dist. 2011). In reaching this conclusion, the court contrasted the allegations against the national chapter with

9

encouragement or assistance provision is akin to the tort of aiding and abetting"].) Since there is no evidence that either Dart or Kurtovich was aware of Snooks's conduct, they could not have knowingly and substantially assisted Snooks's conduct. Accordingly, the entry of summary judgment in their favor is warranted on this Count as well.

## III. The Title VII Claim Against the Sheriff's Department

The Sheriff's Department has moved for summary judgment on this claim on the basis that the claim is barred by the *Ellerth/Faragher* doctrine.[6] Ordinarily, when a supervisor is a sexual harasser, the employer is strictly liable for the supervisor's conduct. *See Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998). However, the Supreme Court created an exception to this rule in the companion cases of *Burlington Indust., Inc. v. Ellerth,* 524 U.S. 742 (1998) and *Faragher v. Boca Raton,* 524 U.S. 775 (1998). In *Ellerth,* the Court stated that:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence...The defense comprise two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

---

the allegations against the local chapter. *See id.* at 331. The court's dicta implied that the allegations that were insufficient to state a claim under the Act against the national chapter may be sufficient to state a claim against the local chapter. *See id.* If this implication is correct, the scope of liability under the Act is broader than what is normally covered under a theory of aider and abettor liability. *See Thornwood, Inc. v. Jenner & Block,* 344 Ill. App.3d 15 (2003) (holding that a defendant must knowingly and substantially assist the principal violation to be liable under a theory of aiding and abetting). However, this Court does not need to decide whether the Act's scope is as broad as *PSI Upsilon* suggests because Stanfield failed to adduce any facts proving that Dart or Kurtovich encouraged or assisted Snooks's conduct in any way.

[6]Stanfield asserts that the Sheriff's department did not properly plead the defense. However, Stanfield appears to overlook the Sheriff Department's Amended Affirmative Defenses, filed on March 12, 2012, where the Sheriff Department properly raised the defense. (Doc. 123.)

524 U.S. at 765. Thus, in order for the Sheriff's Department to properly assert this defense, there must be no tangible employment action, the Sheriff's Department must have exercised reasonable care in preventing the harassment and Stanfield must have unreasonably failed to take advantage of the Sheriff's Department's corrective measures. *See McPherson v. City of Waukegan,* 379 F.3d 430, 439-40 (7th Cir. 2004).

### A. Stanfield Did Not Suffer a Tangible Employment Action

A tangible employment action must cause a substantial detriment to the plaintiff's employment relationship. *See Savino v. C.P. Hall Co.,* 199 F.3d 925, 932 (7th Cir. 1999). The Supreme Court defined a tangible employment action to be a significant change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 766; *see also Roby v. CWI, Inc.,* 579 F.3d 779, 784 (7th Cir. 2009). Stanfield was never demoted, fired, suspended, disciplined or had her pay reduced. As a result, there is no genuine issue of material fact that Stanfield was not subjected to a tangible employment action.

Stanfield's arguments to the contrary are unavailing. First, Stanfield argues that she was subjected to a tangible employment action when she was transferred from Central Kitchen to Records. It is questionable whether this transfer is related to Snooks's desire to sexually harass Stanfield. Regardless, it does not qualify as an adverse employment action. A transfer that does not involve a demotion in form or substance, does not rise to the level of a materially adverse employment action. *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996). Neither does a transfer that involves "no reduction in pay and no more than a minor change in working conditions." *Id.* The transfer from Central Kitchen to Records was not a demotion,

11

Stanfield did not receive a reduction in pay, and she has failed to provide any evidence of how it resulted in a change in her working conditions. Snooks would have been her supervisor if she was in either Central Kitchen or Records. Stanfield argues that the transfer prevented her from working on a recycling project. However, she failed to explain how the inability to do this single project damaged her. Accordingly, the transfer from Central Kitchen to Records is not a tangible employment action.

Stanfield also argues that Snooks's harassment was, in of itself, a tangible employment action because it constituted a change of working conditions. However, sexual harassment, including harassment that results in sexual touching or relations, cannot alone constitute a tangible employment action. *See Gawley v. Indiana University,* 276 F.3d 301, 311 (7th Cir. 2001) (holding that harassing comments about a plaintiff's weight, pants, breasts and touching plaintiff's breast did not amount to a tangible employment action); *see also Hetreed v. Allstate Ins. Co.,* No. 96 C 2021, 1999 WL 311728, *4-5 (N.D. Ill. May 12, 1999), *aff'd,* 6 Fed. Appx. 397, 399 (7th Cir. 2001) (unpub.); *Doe v. Lansal, Inc.,* No. 08 C 5983, 2009 WL 5166224, *6 (N.D. Ill. Dec. 22, 2009) ("the Court [finds] unavailing Plaintiff's argument that submission to sexual advances is *per se* a tangible employment action."). If it did, the defense identified in *Ellerth* and *Faragher* could never be raised successfully. There is no evidence that Stanfield suffered a tangible employment action. Accordingly, the Sheriff's Department may assert the *Ellerth/Faragher* defense.[7]

---

[7] In arguing her point, Stanfield relies on a recent opinion issued by another court in this district, *Johnson v. Bristol-Myers Squibb Co.,* No. 10 C 1553, 2010 WL 3927651, *3 (N.D. Ill. Oct. 1, 2010). There, the court held that there was a genuine issue of material fact as to whether there was a tangible employment action because the defendant's "threats and sexual demands, along with forcing unprotected sex on [the plaintiff] and inappropriately touching her, significantly changed the conditions of [the plaintiff's] employment thereby creating a hardship." *Id.* However, this Court does not believe that *Johnson's* interpretation of what constitutes a tangible employment action is correct under the law of this Circuit.

> **B.      Stanfield Raises a Genuine Issue of Material Fact as to Whether the Sheriff's Department Exercised Reasonable Care to Prevent and Promptly Correct Snooks's Sexually Harassing Behavior**

The first element of the *Ellerth/Faragher* affirmative defense requires the Sheriff's Department to show that it exercised reasonable care to prevent and correct Snooks's sexually harassing behavior. The Sheriff's Department contends that it exercised this reasonable care because it "had a comprehensive anti-harassment policy in effect" during the period when Stanfield was harassed. However, the "mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment in the workplace." *Gentry v. Export Packaging Co.,* 238 F.3d 842, 847 (7th Cir. 2001); *Passananti v. Cook County,* 689 F.3d 655, 673 (7th Cir. 2012). The policy must not only be appear effective on paper, it "also must be reasonably effective in practice." *Passananti,* 689 F.3d at 674; *see also Equal Employment Opportunity Commission v. Management Hospitality of Racine, Inc.,* 666 F.3d 422, 435 (7th Cir. 2012). In this case, Stanfield has set forth evidence that raises a genuine issue of material fact as to whether the Sheriff's Office's sexual harassment policy was reasonably effective in practice.

The Department's Sexual Harassment Policy directs a victim of sexual harassment "to directly inform the harasser that the conduct is unwelcome and must stop." (Pl. Ex. 1.) If the conduct does not stop, the victim is directed to "fill out a Sexual Harassment Complaint Form and report the incident to his or her supervisor. If the employee's supervisor is the alleged harasser, the employee will notify the next in command." (*Id.*) However, the policy also provides that "a person who has witnessed or has knowledge of an incident of sexual harassment is also encouraged to follow this reporting procedure." (*Id.*) This "encouragement" is a requirement for a supervisor. (*See* Pl. Add. 56.1 ¶ 17; Pl. Ex. 1 ["Any supervisor who is aware of or reasonably should be aware

13

of sexually harassing conduct by another employee, whether or not anyone complains about such harassment, but fails to report that conduct as required by this policy may be subject to discipline."].)

During her deposition, Stanfield testified that she refused Snooks's sexual advances and told him that his conduct was unwelcome. (Pl. Add. 56.1 ¶ 16.) She also testified that Lt. Luna, a supervisor in the Records Department, witnessed Snooks's sexual harassment of Stanfield. (*Id.* at ¶¶ 6, 18.) In fact, Lt. Luna specifically warned Snooks that he was risking a sexual harassment complaint; however, Lt. Luna did nothing to report the conduct or stop it from occurring. (*Id.* at ¶ 18.) Additionally, Stanfield told Charles Holman, the training coordinator at the Sheriff's academy, that Snooks had sexually assaulted her. (*Id.* at ¶ 39.) Holman did not report Stanfield's allegations. Holman also testified that the Sheriff's Department's historical practice was that "when a person would file a sexual harassment complaint, whether it was against an officer or a supervisor, they ended up being bounced out of the division by the command level individuals." (*Id.* at ¶ 40.)

Accordingly, while the Sheriff's Department adopted an appropriate sexual harassment policy, Stanfield has presented sufficient evidence to raise material issues of fact as to whether the policy and procedure were ignored in practice. She presented evidence that she made supervisors aware of Snooks' sexual harassment but that those supervisors did not report the sexual harassment when they became aware of it. She presented evidence that employees were punished when they followed the formal complaint procedure. This creates a genuine issue of material fact as to whether the policy was effective in practice. Accordingly, since there is a material issue of fact as to whether

the Sheriff's Department exercised reasonable care to prevent Snooks's behavior, the Sheriff's Department has failed to prove the first prong of the *Ellerth/Faragher* defense at this time.[8]

### C. Stanfield Did Not Unreasonably Fail to Take Advantage of any Preventive or Corrective Opportunities Provided by the Sheriff's Department

Even if it were undisputed as to whether the Sheriff's Department exercised reasonable care to prevent and correct Snooks's sexually harassing behavior, a grant of summary judgment would be inappropriate because Stanfield presented sufficient evidence to raise a genuine issue of material fact as to the second element of the *Ellerth/Faragher* defense. The second element requires the Sheriff's Department to prove that Stanfield unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Sheriff's Office or to avoid harm otherwise. The Sheriff's Department contends that the eight-month period of time between Snooks's harassment and the filing of the official complaint constituted a failure to take advantage of corrective measures under *Ellerth/Faragher*. The Seventh Circuit has held that an unreasonable delay in reporting alleged harassment constitutes a failure to take advantage of corrective measures and precludes recovery. *See Gawley,* 276 F.3d at 312 (employer established second element where plaintiff neglected to complain about comments for seven months); *Savino,* 199 F.3d at 933 (applying *Ellerth/Faragher* where plaintiff waited four months to report harassment); *Jackson v. County of Racine,* 474 F.3d 493, 501 (7th Cir. 2006) (same). "The purpose of this requirement is tied to Title

---

[8]The Sheriff's Department also argues that Stanfield never tested the policy because she did not report the conduct until June 2010. As soon as she reported it, the Sheriff's Department commenced an investigation. However, Stanfield is not required to follow the Sheriff's Department's designated complaint procedure to sufficiently report the harassment. *See Cerros v. Steel Techs., Inc.,* 398 F. 3d 944, 952 (7th Cir. 2005). Since she made supervisors aware of the sexual harassment but they did not report it, there is a genuine issue of material fact as to whether the policy was effective in practice.

VII's primary objective, which is not meant to provide redress but rather to avoid harm." *Gawley,* 276 F.3d at 312.

However, in this case, the amount of time it took Stanfield to file the formal written complaint was not unreasonable under the terms of the policy. The policy at issue here provided Stanfield with 365 days to file her written formal complaint. There is no dispute that Stanfield filed her complaint within this 365 day period. Compliance with the reporting requirements is *per se* evidence of reasonably taking advantage of an employer's corrective measures. *See Haugerud v. Amery School District,* 259 F.3d 678, 699-700 (7th Cir. 2001) (complying with any one of the employer's reporting options is evidence of reasonably taking advantage of the harassment policy); *see also Mangano v. Sheahan,* No. 00 C 3953, 2002 WL 1821738, *10-11 (N.D. Ill. Aug. 6, 2002) (same).

Moreover, the Seventh Circuit has held that "compliance with an employer's designated complaint procedure is not the sole means by which an employee can fulfill her 'coordinate duty to avoid or mitigate harm.'" *Cerros,* 398 F.3d at 952 (7th Cir. 2005) (citing *Faragher,* 524 U.S. at 806). Rather, "[t]he relevant inquiry is [] whether the employee adequately alerted her employer to the harassment, thereby satisfying her obligation to avoid the harm, not whether she followed the letter of the reporting procedures set out in the employer's harassment policy." *Id.*; *see also Gul-E-Rana Mirza v. The Neiman Marcus Group, Inc.,* 649 F. Supp. 2d 837, 861 (N.D. Ill. 2009). Stanfield presented evidence that two supervisors were aware of the harassment at the time it occurred or soon thereafter. Under the policy, these supervisors should have reported the harassment. This evidence is sufficient to raise a genuine issue of material fact as to whether Stanfield adequately alerted the Sheriff's Department to the harassment. Accordingly, the Court finds that Stanfield has raised a

genuine issue of material fact as to whether she reasonably took advantage of the Sheriff's Department's corrective measures. Thus, the Sheriff's Department is not entitled to summary judgment on this count.

### IV.  Illinois Civil Rights Act Claim Against Cook County

Cook County moved for summary judgment on this claim on the basis that, as a matter of law, Cook County cannot be held vicariously liable for the alleged conduct of the Sheriff, or his deputies, because the Sheriff, and his deputies, are not Cook County employees. *See Moy v. County of Cook,* 159 Ill. 2d 519 (1994) (holding that "the sheriff is a county officer and, as such, is not in an employment relationship with the County of Cook" and "therefore, the county may not be held vicariously liable for the sheriff's alleged negligent conduct."); *O'Connor v. County of Cook,* 787 N.E.2d 185 (1st Dist. 2003) (same). Stanfield concedes that Cook County is not a proper party to this case. Accordingly, judgment is entered in favor of Cook County on this claim.

### V.  Illinois Civil Rights Act Claim Against the Sheriff's Department

The Sheriff's Department also moves for summary judgment on Count VI on the basis that the Illinois Civil Rights Act claim is redundant of the Title VII claim. It argues that the Illinois Civil Rights Act created no new rights; rather, it is the same as Title VII. Thus, according, to the Sheriff's Department, Stanfield's Civil Rights Act claim should be dismissed. This argument is incorrect.

An Illinois Civil Rights Act is not redundant of a Title VII claim because liability under the Illinois Civil Rights Act is strict whereas under Title VII it is not. *See Sangamon County Sheriff's Dep't v. Illinois Human Rights Commission,* 233 Ill. 2d 125, 138-39 (2009). In *Sangamon,* the Illinois Supreme Court held the following:

> Under Title VII, employers are not always automatically liable for sexual harassment
> by their supervisors where the misconduct has created an intimidating, hostile or

>offensive work environment, and grounds for employer liability may be required. By contrast, the Act has no such requirement. Where an employee has been sexually harassed by supervisory personnel, the Act imposes strict liability on the employer, regardless of whether the employer knew of the offending conduct. On the issue of employer liability in a sexual harassment claim, we are bound by the language in the Act, not by decisions of the federal courts.

*Id.* (internal quotations and citations omitted). Since the Illinois Civil Rights Act is broader than Title VII, these claims are not redundant of one another. Moreover, under the Illinois Supreme Court's holding in *Sangamon,* the Sheriff's Department cannot avoid liability on this claim at trial by asserting the *Ellerth/Faragher* defense. If, at trial, Stanfield proves her case against Snooks, the Sheriff's Department will be strictly liable. Accordingly, the Sheriff's Department is not entitled to summary judgment on Count VI.

## CONCLUSION

Therefore, for the reasons set forth above, the Motion for Summary Judgment is granted in part and denied in part. The motion is granted and judgment is entered in favor of Defendants Dart and Kurtovich on Counts II and V. The motion is granted and judgment is entered in favor of Defendant Cook County on Count VI. The motion is denied in all other respects. The parties shall come in on January 9, 2013 at 9:00 a.m. to set a trial date.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12/27/2012

18